**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

ALBERT DUDLEY,

   Plaintiff,                                      CASE NO.:

-VS-

OCWEN LOAN SERVICING, LLC,

   Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff, ALBERT DUDLEY, by and through the undersigned counsel, and sues Defendant, OCWEN LOAN SERVICING, LLC, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq*. ("FCCPA").

**INTRODUCTION**

1. The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone

1

subscribers another option: telling the auto-dialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The alleged violations described herein occurred in Montgomery County, Pennsylvania.

9. The Defendant's principal place of business is 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(1), as it is a judicial district in which the defendant resides, and all Defendant's reside in the State of Florida.

## FACTUAL ALLEGATIONS

10. Plaintiff is a natural person, and citizen of the State of Pennsylvania, residing in the city of Norristown, Montgomery County.

11. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

12. Plaintiff is an "alleged debtor."

13. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

14. Defendant is a corporation with its principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409 and which conducts business in the State of Pennsylvania. Defendants registered agent, Corporation Service Company, is located at 1201 Hays Street, Tallahassee, Florida 32301.

15. The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

16. Defendant is a "creditor" as defined in Florida Statute §559.55(5).

17. Defendant called Plaintiff on Plaintiff's cellular telephone approximately four hundred (400) times in an attempt to collect a debt.

18. Defendant attempted to collect an alleged debt from Plaintiff by this campaign of telephone calls.

19. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "auto-dialer calls"). Plaintiff will testify that he knew it was an auto-dialer because of the vast number of calls he received and because he heard a pause when he answered his telephone before a voice came on the line and he received prerecorded messages from Defendant.

20. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (484 ) ***-9449, and was the called party and recipient of Defendant's calls.

21. Defendant placed an exorbitant number of automated calls to Plaintiff's cellular telephone (484 ) ***-9449 in an attempt to collect on a home loan.

22. Upon receipt of the calls from Defendant, Plaintiff identified the telephone number on his caller ID as an Ocwen Loan Servicing, LLC number. Plaintiff was familiar with this number due to the high number of telephone calls he received from Defendant.

23. Since the Defendant began its campaign of harassing telephone calls, Plaintiff instructed Defendant's agents to stop calling his cellular telephone.

24. In or about August 2016, Plaintiff communicated with Defendant from his aforementioned cellular telephone number and instructed Defendant's agent to cease calling.

25. Each call Defendant made to Plaintiff's cellular telephone after Plaintiff first revoked consent was made willfully and knowingly by the Defendant.

26. Despite clearly and unequivocally revoking any consent Defendant may have believed they had to call Plaintiff on his cellular telephone, Defendant continued to place automated calls to Plaintiff's cellular telephone number

27. Plaintiff's numerous conversations with Defendant's agents/representatives over the telephone wherein he demanded a cessation of calls were in vain, as Defendant continued to bombard Plaintiff with automated calls unabated.

28. On numerous occasions, Plaintiff made Defendant aware that he was unable to make a payment; despite this knowledge, Defendant continued its barrage of calls to Plaintiff's cellular telephone number in an effort to harass Plaintiff into paying having knowledge of his inability to pay.

29. As a result of these unwanted and harassing calls, Plaintiff suffered conduct reasonably expected to abuse or harass him.

30. In addition to making Defendant aware of Plaintiff's financial struggles, Plaintiff also told Defendant's agents on many occasions that he was unable to answer calls while he was at work and that it was detrimental to his work to be receiving these calls.

31. Often times, during his regular work hours, Defendant would call Plaintiff's cellular telephone number multiple times in a single day (sometimes more than once per hour) in an effort to harass and annoy Plaintiff into paying.

32. Defendant's incessant calling would often divert Plaintiff's attention away from his job.

33. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

34. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant, to remove the number.

35. Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they wish for the calls to stop.

36. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

37. Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

38. Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

39. Defendant's corporate policy provided no means for Plaintiff to have his number removed from Defendant's call list.

40. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

41. Not a single call placed by Defendant to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

42. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

43. From each and every call placed without consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

44. From each and every call without express consent placed by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of occupation of his cellular telephone line and cellular telephone by unwelcome calls, making the telephone unavailable for legitimate callers or outgoing calls while the telephone was ringing from Defendant's calls.

45. From each and every call placed without express consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

46. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the telephone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

47. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

48. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone where a voice message was left which occupied space in Plaintiff's telephone or network.

49. Each and every call placed without express consent by Defendant to Plaintiff's cellular telephone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular telephone and his cellular telephone services.

50. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress and aggravation.

## COUNT I
### (Violation of the TCPA)

51. Plaintiff fully incorporates and re-alleges paragraphs one (1) through fifty (50) as if fully set forth herein.

52. Defendant willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that he wished for the calls to stop.

53. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

54. Plaintiff fully incorporates and re-alleges paragraphs one (1) through fifty (50) as if fully set forth herein

55. At all times relevant to this action Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

56. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

57. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

58. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

***/s/ John C. Distasio*** 
John C. Distasio, Esquire
Florida Bar No.: 096328
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile:  (813) 257-0571
Primary Email: JDistasio@ForThePeople.com
Secondary Email: Cheyennereed@ForThePeople.com
*Attorney for Plaintiff*